UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JIMMY D., | ) |
|              Plaintiff | ) |
| v. | )    No. 1:24-cv-00331-KFW |
| LELAND DUDEK,<br>Acting Commissioner of<br>Social Security, | ) |
|              Defendant | ) |

### MEMORANDUM DECISION[1]

The Plaintiff in this Supplemental Security Income appeal contends that the Administrative Law Judge (ALJ) erroneously evaluated record medical opinions, the severity of his alleged impairments, as well as his subjective-symptom testimony in determining his residual functional capacity (RFC), and failed to resolve an apparent conflict between the testimony of the vocational expert (VE) at hearing and the Dictionary of Occupational Titles (DOT). *See* Plaintiff's Brief (ECF No. 12) at 1-2. For the following reasons, I discern no error and affirm the Commissioner's decision.

### I. Background

The Plaintiff applied for benefits in January 2021. *See* Record at 174-78. After his claim was denied at the initial and reconsideration levels, *see id.* at 66-83, the Plaintiff requested a hearing before an ALJ, *see id.* at 97-99. That hearing took place in March 2023, *see id.* at 37-64, following which the ALJ issued a decision

---

[1] The parties have consented to me presiding over all proceedings in this action including the entry of judgment. *See* Declaration Regarding Consent (ECF No. 9).

finding that the Plaintiff suffered from "the following severe impairments: residual effects of cerebrovascular accidents (reportedly in 2017); disorder of the muscle, ligaments, and fascia; neurocognitive disorder; anxiety disorder; depressive disorder; and post[-]traumatic stress disorder" (PTSD), *see id.* at 19. Considering those impairments, the ALJ found that the Plaintiff had—during the relevant period—the RFC "to perform light work," as defined in 20 C.F.R. § 416.967(b), except that he could frequently balance, stoop, and handle and finger with his right upper extremity; could occasionally push or pull with his bilateral upper and lower extremities, climb ramps or stairs, and kneel, crawl, or stoop; could never climb ladders, ropes, or scaffolds; "could not work in concentrated atmospheric conditions, at unprotected heights, with dangerous cutting or crushing machinery, or with construction debris"; could understand and remember simple instructions, perform simple tasks, and adapt to routine changes; and "should avoid interaction with the general public." *Id.* at 23. The ALJ found that the Plaintiff was unable to perform any past relevant work but that he could perform other jobs existing in significant numbers in the national economy was therefore not disabled. *See id.* at 29-31. The Appeals Council denied the Plaintiff's request to review the ALJ's decision, *see id.* at 1-3, making that decision the Commissioner's final determination, *see* 20 C.F.R. § 416.1481.

## II. Standard of Review

A final decision of the Commissioner is subject to judicial review to determine whether it is based on the correct legal standards and supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Seavey v. Barnhart*, 276 F.3d 1, 9

(1st Cir. 2001). Substantial evidence in this context means evidence in the administrative record that a reasonable mind could accept as adequate to support an ALJ's findings. *See Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019). If an ALJ's findings are supported by substantial evidence, they are conclusive even if the record could arguably support a different result. *See Irlanda Ortiz v. Sec'y of Health & Hum. Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). But an ALJ's findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

### III. Discussion

The Plaintiff first contends that the ALJ failed to adequately evaluate the supportability and consistency of the opinions of non-examining medical consultant Melanie Thompson, M.D., and non-examining psychological consultant Lewis Lester, Ph.D., both of whom initially reviewed the Plaintiff's benefits application. *See* Plaintiff's Brief at 11-13. Dr. Thompson opined that the Plaintiff could occasionally climb ramps or stairs, push or pull with his upper and lower extremities, kneel, crouch, and crawl; frequently balance, stoop, handle and finger; never climb ladders, ropes, or scaffolds; and should avoid exposure to environmental and workplace hazards. *See* Record at 70-72. Dr. Lester opined that the Plaintiff had the mental capacity to perform "simple work-related tasks on a sustained basis in a routine work setting that does not require interaction with the public." *Id.* at 73-74. The ALJ found both doctors' opinions persuasive because they were consistent with the evidence of record as a whole, including the Plaintiff's "limited and conservative"

3

treatment history and "reasonable range of reported daily activities." *Id.* at 27-28.

The Plaintiff argues that the ALJ erroneously found persuasive and relied upon Drs. Thompson's and Lester's opinions in determining his RFC because neither doctor had the opportunity to review later-submitted evidence, and it was beyond the ALJ's lay expertise to determine whether that evidence would have materially altered their opinions. *See* Plaintiff's Brief at 11-13. The later-submitted evidence includes the Plaintiff's (1) approval in 2021 and reauthorization in 2022 and 2023 for in-home care services by the Maine Department of Health and Human Services (MDHHS); (2) treatment records from Down East Community Hospital beginning in February 2021, Regional Medical Center at Lubec beginning in August 2022, and Ballad Health in late 2018 to early 2019; and (3) psychological evaluation and report by Adrienne Butler, Ed.D., in late December 2021. *See id.* at 12; Record at 310-24, 342-45, 347-427, 429-724. The Plaintiff also faults the ALJ for failing to consider the evidence underlying the MDHHS disability decision; specifically, the agency's assessments of whether or how his activities of daily living and ability to care for himself were limited. *See* Reply (ECF No. 15) at 2-3.

None of these arguments carries the day. To begin with, all of the later-submitted evidence was included in the list of exhibits, *see* Record at 32-36, which creates a presumption that the ALJ considered it, *see John M. v. Berryhill*, No. 1:17-cv-00452-JHR, 2018 WL 6272888, at *8 (D. Me. Nov. 30, 2018). The Plaintiff offers no evidence to rebut that presumption. *Cf. Ferguson v. Berryhill*, No. 1:16-cv-00489-DBH, 2017 WL 2417849, at *4 (D. Me. June 4, 2017) (rec. dec.)

4

(concluding that the presumption was rebutted where the plaintiff noted evidence that the ALJ "made a finding that she could not have made if she had carefully reviewed the earlier materials"), *aff'd*, 2017 WL 2683952 (D. Me. June 20, 2017). Relatedly, the ALJ was not required to expressly discuss in her decision how she considered each evidentiary record. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017) (explaining that the agency employs a "reasonable articulation standard for . . . decisions that does not require written analysis about how we considered each piece of evidence"); 20 C.F.R. § 416.920c(b)(1) ("[I]t is not administratively feasible . . . to articulate in each determination or decision how we consider all of the factors for all of the medical opinions and prior administrative medical findings in your case record.").

Moreover, this district has long recognized that an ALJ is "perfectly competent" to "judg[e] whether later submitted evidence is material" to opinion evidence pertaining to a claimant's RFC. *Breingan v. Astrue*, No. 1:10-cv-92-JAW, 2011 WL 148813, at *6 n.5 (D. Me. Jan. 17, 2011) (rec. dec.), *aff'd*, 2011 WL 709856 (D. Me. Feb. 22, 2011). Most critically, however, the Plaintiff has not demonstrated "a reasonable probability . . . that the outcome would be different upon remand," *see Robert S. v. Kijakazi*, No. 2:22-cv-00129-LEW, 2023 WL 415810, at *2 n.1 (D. Me. Jan. 26, 2023) (cleaned up) (rec. dec.), *aff'd*, 2023 WL 1992637 (D. Me. Feb. 14, 2023), because he neglects to explain how the later-submitted evidence "reflect[s] a material change" that "call[s] into question" Dr. Thompson's or

5

Dr. Lester's opinions regarding his RFC limitations,[2] *Tiffany B. v. Kijakazi*, No. 2:22-cv-00102-LEW, 2023 WL 2156968, at *4 (D. Me. Feb. 22, 2023) (rec. dec.), *aff'd*, 2023 WL 2529579 (D. Me. Mar. 15, 2023); *see also Bourret v. Colvin*, No. 2:13-cv-00334-JAW, 2014 WL 5454537, at *4 (D. Me. Oct. 27, 2014) (holding that a claimant must "specify what it is about or within each" later-submitted record that calls an opinion into question because "[i]t is not the court's responsibility to search through the [voluminous records] listed by the [claimant] in order to determine whether all of that evidence is merely cumulative or one or more pages includes the necessary notice of changed medical circumstances"). Absent evidence of such prejudice, remand on this point is nothing more "than an empty exercise." *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 656 (1st Cir. 2000).

The Plaintiff also contends that the ALJ erred at Step 2 by accepting Dr. Thompson's opinion that there was insufficient record evidence to support the severity of his alleged respiratory, hypertension, and spinal impairments when ample later-submitted evidence existed to the contrary. *See* Plaintiff's Brief at 13; Record at 19-20, 72. However, the ALJ did not cite Dr. Thompson's opinion as the basis for determining that the Plaintiff's alleged hypertension and spinal impairments were not severe, and plainly considered but did not adopt the conflicting findings in the later-submitted evidence. *See* Record at 19-20, 23-29; *see also Theresa W. v. Kijakazi*, 1:20-cv-00308-LEW, 2021 WL 3683349, at *3 (rec. dec.) (D. Me. Aug.

---

[2] Notably, the Plaintiff's treatment history at Ballad Health was discussed at length in a consultative examination report by Larry Newman, M.D., which Dr. Thompson considered as part of her initial review of the Plaintiff's benefits application. *See* Record at 70, 326-31.

6

19, 2021) ("Expert medical evidence . . . is not required for an ALJ to determine whether an alleged impairment constitutes a severe medically determinable impairment."), *aff'd*, 2021 WL 5614753 (D. Me. Nov. 20, 2021).  Accordingly, the Plaintiff's argument both neglects to consider the record as a whole and improperly asks the Court to reweigh the evidence and reach a different conclusion. *See Becky K. G. v. Saul*, No. 1:20-cv-00089-GZS, 2020 WL 7418974, at \*5 (D. Me. Dec. 17, 2020) (rec. dec.) ("That the record could arguably support a different conclusion does not entitle the plaintiff to remand; it is for the ALJ, not the court, to draw conclusions from the evidence and to resolve any conflicts therein."), *aff'd*, 2021 WL 66609 (D. Me. Jan. 7, 2021); *see also West v. Berryhill*, No. 17-1170, 2017 WL 6499834, at \*1 (1st Cir. Dec. 11, 2017) ("[T]he court considers the ALJ's decision as a whole when determining whether substantial evidence supported the ALJ's findings.").

Further, although the ALJ neglected to articulate how she assessed the Plaintiff's alleged respiratory impairment, *see* Record at 19-20, any error in this respect is rendered harmless because the Plaintiff has not demonstrated how it affected the ultimate disability decision. *See Bolduc v. Astrue*, No. 09-220-B-W, 2010 WL 276280, at \*4 n.3 (D. Me. Jan. 19, 2010) ("[A]n error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the [claimant] can demonstrate how the error would necessarily change the outcome of [their] claim.").

The Plaintiff next challenges the ALJ's evaluation of Dr. Newman's and Dr. Butler's opinions, both of which the ALJ found persuasive to the extent they were consistent with record evidence—despite the fact that neither was expressed in

7

vocationally relevant terminology—but rejected insofar as they contained restrictions greater than were set forth in the RFC.  *See* Record at 28; Plaintiff's Brief at 14-16.

The ALJ evaluated Dr. Newman's opinion as follows:

> I concur with [Dr. Newman's] assessment insofar as it is consistent with the assessment of Dr. Thompson and the [RFC] . . . . In particular, I note that Dr. Newman's findings are the primary basis for including significant manipulative restrictions in the [RFC] . . . . I also note that Dr. Newman's opinion was formulated in March of 2021, which means he did not have access to the past several years of medical evidence in this case.  Overall, I find his opinion . . . informative . . ., but I ultimately base my own finding on the evidence of record viewed as a whole.[3]

Record at 28.  As for Dr. Butler's opinion, the ALJ was less persuaded by the portions of it that "set forth greater limitations" than those included in the RFC because "a greater degree of limitation would be inconsistent with the [Plaintiff's] limited and conservative mental health treatment history, his findings upon mental status examination, and his reasonable range of reported daily activities."  *Id.*

The Plaintiff faults the ALJ for (1) "fail[ing] to specifically evaluate" Dr. Newman's findings that he could only sit for 10 minutes, stand for 15 minutes, and walk for no more than 100 feet at a time, and could only lift 10 pounds with his right arm and less than that with his left arm, and (2) "fail[ing] to specifically identify any evidence of record that was inconsistent with [Dr. Butler's] opinion."  Plaintiff's Brief at 14-16.  These errors are not harmless, the Plaintiff states, because the greater limitations in Dr. Newman's and Dr. Butler's opinions were expressed in

---

[3] Dr. Thompson found that Dr. Newman's opinion was unsupported by "the totality of the evidence" and "relie[d] heavily" on the Plaintiff's subjective complaints as well as "the assessment of limitations resulting from an impairment for which [Dr. Newman] ha[d] not treated or examined" the Plaintiff.  Record at 70.  She also noted the inconsistency between Dr. Newman's findings that the Plaintiff's left arm strength was 4/5 but that he could "only carry cereal boxes" with it.  *Id.* at 70, 329, 331.

8

vocationally relevant terms and are inconsistent with both his RFC and the jobs identified by the VE and adopted by the ALJ at Step 5. *See id.* at 15-16.

Regardless of whether these greater restrictions were articulated in vocationally relevant terms, the ALJ considered and then reasonably rejected them as inconsistent with and unsupported by record evidence, *see* Record at 28, and the Plaintiff's argument does not dilute the validity of those findings. As discussed above, "the ALJ was not obligated to provide a detailed evaluation of every statement in [Dr. Newman's] opinion." *Kaitlynn H. v. O'Malley*, No. 1:23-cv-00429-SDN, 2024 WL 4969980, at *3 (D. Me. Dec. 4, 2024) (rec. dec.), *aff'd*, 2025 WL 787428 (D. Me. Mar. 12, 2025). With respect to Dr. Butler's opinion, the Plaintiff's contention both disregards the specific evidence the ALJ cites as inconsistent with the more restrictive limitations therein and fails to consider the ALJ's earlier discussion of that evidence. *See* Record at 23-28. At bottom, the Plaintiff's argument is just another improper request to reweigh the evidence. *See Becky K. G.*, 2020 WL 7418974, at *5.

The Plaintiff then contests the ALJ's evaluation of his subjective symptom testimony and reports; namely, the AJL's finding that his activities of daily activities were inconsistent with his allegations of disabling impairments. *See* Plaintiff's Brief at 16-19; *see also* SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017) ("If [an ALJ] cannot make a . . . [fully favorable] decision . . . based solely on objective medical evidence, then [the ALJ] carefully consider[s] other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms . . . includ[ing] statements from the individual, medical sources, and any

9

other sources that might have information about the individual's symptoms, including agency personnel, as well as the factors set forth in our regulations.").

The ALJ found that the Plaintiff's ability to complete "personal care tasks with breaks, prepare simple meals, drive for short distances, shop for household items, handle personal finances, watch television, play computer games, spend time with family members, and attend his medical appointments" was inconsistent with the alleged severity of his limitations. Record at 29. The ALJ also noted that while the Plaintiff "at times described a more limited range of daily activity," that testimony did not carry great weight because it could not be "objectively verified with any reasonable degree of certainty" and, even if the Plaintiff were so limited, it was "difficult to attribute that degree of limitation to a medical condition . . . in view of the relatively weak medical evidence and other factors discussed in this decision." *Id.*

This evaluation was erroneous, the Plaintiff argues, because the evidence from which the ALJ gleaned his activities of daily living actually reflects more restrictive limitations, and those limitations were in fact objectively verified as severe enough to warrant in-home assistance by MDHHS at multiple points during his claim period. *See* Plaintiff's Brief at 17-19. I am unpersuaded. That the Plaintiff would have liked the ALJ to place more weight on his subjective symptom testimony and reports, or can point to evidence that might support a different conclusion, is not cause for remand. *See Kyle K. v. O'Malley*, No. 2:23-cv-00044-JAW, 2024 WL 356910, at *3 (D. Me. Jan. 31, 2024) (rec. dec.), *aff'd*, 2024 WL 1092998 (D. Me. Mar. 13, 2024). Moreover, the MDHHS evaluations of record appear to be based on the Plaintiff's

10

self-assessment rather than objective medical findings.  *See* Record at 310-24.

Finally, the Plaintiff contends that the ALJ failed to resolve an apparent conflict between the VE's testimony that an individual limited to no more than occasional pushing and pulling with his bilateral upper and lower extremities could perform the light exertion level jobs identified at hearing and adopted by the ALJ—mail clerk, DOT 209.687-026, router, DOT 222.587-038, and office helper, DOT 239.567-010—and the DOT's physical requirements of light work, which "may involve more than occasional pushing and pulling."  *See* Plaintiff's Brief at 19-20; *see also* Record at 59-60; Appendix C, § IV to DOT, 1991 WL 688702.

Social Security Ruling (SSR) 00-4p affirmatively obligates ALJs to "(i) inquire whether there is any conflict between VE testimony and the DOT, (ii) elicit a reasonable explanation for any apparent conflict, and (iii) resolve said conflict, regardless of how it was identified."  *Sharon W. v. Kijakazi*, 2:21-cv-00287-NT, 2022 WL 2751645, at *4 (D. Me. July 14, 2022) (rec. dec.) (cleaned up), *aff'd*, 2022 WL 3042984 (D. Me. Aug. 1, 2022).  However, "because SSR 00-4p pertains only to *apparent* conflicts, a [plaintiff] waives a claim of failure to identify and resolve a conflict between [VE] testimony and the DOT unless [they] can show that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance."  *Welch v. Astrue*, No. 1:11-cv-384-GZS, 2012 WL 3113148, at *7 (D. Me. July 11, 2012) (rec. dec.) (cleaned up), *aff'd*, 2012 WL 3113144 (D. Me. July 31, 2012).

There is no conflict here, apparent or otherwise.  The DOT states that a job should be designated as "Light Work" when its "[p]hysical demand requirements are

11

in excess of those for Sedentary Work," such as when it requires "(1) . . . walking or standing to a significant degree; or (2) . . . sitting most of the time but entails pushing and/or pulling of arm and leg controls; and/or (3) . . . working a production rate entailing the constant pushing and/or pulling of materials . . . ." Appendix C, § IV to DOT, 1991 WL 688702; *see also* 20 C.F.R. § 416.967(b) (outlining the physical requirements of light work). By its use of disjunctives, the DOT instructs that jobs designated as light work can but do not necessarily involve constant pushing and pulling. *See Hurst v. O'Malley*, No. 1:23-00137-N, 2024 WL 4342792, at *9 (S.D. Ala. Sept. 27, 2024). Indeed, nothing in the DOT's description of mail clerks, routers, or officer helpers, which are all designated as light work positions, suggests that more than occasional pushing and pulling is required.

Here, the VE provided three representative occupations in response to the ALJ's hypothetical and, importantly, testified that her response was consistent with the DOT. *See* Record at 60. That testimony constitutes substantial evidence to support the ALJ's Step 5 finding. The Plaintiff was also represented at hearing and his counsel questioned the VE but neither identified nor inquired about any conflicts. *See id.* at 63. This is precisely the type of concern that the Plaintiff's counsel is expected to explore with the VE at hearing instead of reserving "such matters to technical challenges before the courts." *Fallon v. Soc. Sec. Admin. Comm'r*, No. 1:10-cv-00058-JAW, 2011 WL 167039, at *9 (D. Me. Jan. 14, 2011) (rec. dec.), *aff'd*, 2011 WL 703590 (D. Me. Feb. 18, 2011). Because there was no conflict and, even if one existed, it was not apparent, SSR 00-4p does not require remand.

## IV.  Conclusion

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.

Dated: April 17, 2025

/s/ Karen Frink Wolf  
United States Magistrate Judge

13